1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9              FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   CHRISTIN KAY BAER,                  Case No.  1:21-cv-01701-BAM

12              Plaintiff,               **ORDER REGARDING PLAINTIFF'S**
                                         **MOTION FOR SUMMARY JUDGMENT**
13        v.
                                         (Docs. 15, 17)
14   CAROLYN COLVIN, Acting
     Commissioner of Social Security,[1]
15
                Defendant.
16

17                        **INTRODUCTION**

18        Plaintiff Christin Kay Baer ("Plaintiff") seeks judicial review of a final decision of the

19   Commissioner of Social Security ("Commissioner") denying her applications for disabled

20   widow's benefits under Title II of the Social Security Act and for supplemental security income

21   under Title XVI of the Social Security Act.  The matter is currently before the Court on the

22   parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A.

23   McAuliffe.[2]

24        Having considered the briefing and record in this matter, the Court finds that the decision

25

26   ───────────────
     [1] Carolyn Colvin became the Acting Commissioner of Social Security on November 30, 2024.  Pursuant to
27   Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn Colvin is substituted as the defendant in this
     suit.
     [2] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case,
28   including entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Docs. 9, 12, 13.)

                                    1

of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a whole and based upon proper legal standards.  Accordingly, this Court will deny Plaintiff's motion for summary judgment and grant the Commissioner's request to affirm the agency's determination to deny benefits.

**FACTS AND PRIOR PROCEEDINGS**

Plaintiff filed an application for widow's disability benefits and an application for supplemental security income on July 7, 2020.  AR 320-30, 331-34.[3]  Plaintiff alleged she became disabled on June 3, 2011, due to bipolar, depression with anxiety, fibromyalgia, peripheral neuropathy, scoliosis with mild curvature, degenerative disc low back and neck, chronic fatigue syndrome, diabetes, carpal tunnel both hands/wrists, sleep apnea, IBS, GERD, COPD, arthritis, A-fib, and chronic hemorrhoids.  AR 344.  Plaintiff's applications were denied initially and on reconsideration.  AR 212-16, 217-20, 227-32.  Subsequently, Plaintiff requested a hearing before an ALJ, and following a hearing, ALJ Deborah Foresman issued an order denying benefits on May 5, 2021.  AR 7-29, 35-82.  Thereafter, Plaintiff sought review of the decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision.  AR 1-5.  This appeal followed.

**Relevant Hearing Testimony**

ALJ Foresman held a telephonic hearing on April 13, 2021.  Plaintiff appeared with her attorney, Robert Ishikawa.  Marilyn J. Stroud, an impartial vocational expert, also appeared.  AR 37.  At the outset of the hearing, Plaintiff amended her alleged onset date to January 16, 2019, the date of her spouse's death.  AR 44.

When asked if any doctors limited her activities, Plaintiff reported that she recently went to urgent care for a meniscus tear in her knee.  She was told to stay off of it until they determine if she needs surgery.  To her knowledge, no one else has ever given her any limitations.  AR 47-48.

Plaintiff testified that the heaviest weight she can lift or carry is three to five pounds.  She can stand about five minutes at a time without issue.  Depending on the day, she can walk with

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

her "rollator probably up to a quarter of a block."  AR 48.  She has been using the rollator daily for about seven years.  It was prescribed by a doctor.  If she does not have the rollator, then she uses a cane.  She can sit approximately 20 or 25 minutes before changing positions.  AR 48-49.

Plaintiff testified that since the last decision on her Title XVI claim, she has been "diagnosed with neuropathy and it is quite severe."  AR 50.  Her legs are weak, and she has trembling in both of her arms and her legs.  She has been falling and is awaiting CT scans on her neck, low back, and brain.  The neuropathy started a couple of years before the hearing, but the shaking, weakness, and falling started in the last six months.  AR 50.

When asked to identify the diagnoses having an impact on her ability to work, Plaintiff testified: her bipolar, social anxiety, and depression, which make it hard for her to be in public or around others; her neuropathy, with the pain and the numbness in her arms and the inability to sit for an extended length of time or type for extended length of time without her hands in severe pain or numbness; her fibromyalgia with constant pain; and her medications with side effects make it hard for her to function on an hourly basis, let alone a daily basis.  AR 52.  Plaintiff explained that with her fibromyalgia, she has pain from her neck through her whole body.  AR 52.

Plaintiff confirmed that she also has been diagnosed with scoliosis and degenerative disc disease.  The pain with her fibromyalgia differs from that of her scoliosis or degenerative disc disease.  The fibromyalgia is more of the joint and muscular.  Her joints swell and put pressure on her body, making it feel like having a 104° fever.  The pain from her degenerative disc disease is a stabbing, burning feeling in the neck and low back.  To treat her fibromyalgia, she is on Oxycodone and Hydrocodone with Tylenol for pain.  AR 52-53.

When asked about her chronic fatigue syndrome, Plaintiff testified that it comes with the fibromyalgia.  She only sleeps two or three hour a night.  She also has sleep apnea.  She wears a CPAP machine, but wakes up every two to three hours.  She is constantly tired and sleeps on and off throughout the day.  AR 54.  Between 8:00 a.m. and 5:00 p.m., Plaintiff probably sleeps about three hours.  AR 54.

Plaintiff also testified that her diabetes plays a role in what she can do.  She has a lot of

hypoglycemic episodes. AR 54. She cannot drive now because she is afraid of what is going to happen. She has not had to go to the emergency room because of the decreases in blood sugar. They just tell her to drink juice. AR 54-55.

Plaintiff confirmed that she has issues with IBS. On an almost daily basis, she has diarrhea. She has accidents once or twice a week. She has no warning that she is about to have a bowel movement or diarrhea. AR 55.

Plaintiff testified that her atrial fibrillation and her gastric reflux (GERD) do not cause her problems. AR 55-56.

Plaintiff also testified that she has gout, which flares up and makes it hard for her to walk. The flare ups happen about every four to six weeks and will last a couple of weeks to a month. AR 56.

When asked about her mental health conditions, Plaintiff testified that she started having problems in September 2011. She was taken off of work after having a nervous breakdown. She was sent to Fresno Community Behavioral Health. They diagnosed her with bipolar, depression, and anxiety. She is on medication and has an appointment with her psychiatrist every four to six weeks. The medication helps her bipolar, but makes her sleepy. AR 56-57. Her bipolar is "pretty much controlled" as long as she is not in a crowd or around people. If she has to "get into public with a lot of people around," then her anxiety kicks up and she feels like she is "being stared at and judged and people are . . constantly looking at [her] weight and then [she gets] anxious and then [she'll] start crying." AR 57. She considers more than ten people a crowd. AR 57. She has not been hospitalized because of her mental health issues. AR 59.

On a typical day, she watches TV with her mom. On a good day, they will go to the grocery store for about 15 minutes. She also will go to doctor appointments. AR 59-60. She can drive short distances, up to five miles. She does not do any chores around the house. AR 60.

Plaintiff testified that she has problems with her memory. She needs a reminder for her medication and has a checklist for every day. She also has difficulty concentrating and caring for herself. Her friend helps her shower. Although she has a shower chair in the bathtub, she cannot wash her hair because of the carpal tunnel. Her hands go numb, and she sometimes needs help

dressing.  AR 61.

When asked about medical records from the cardiovascular consultant's heart center, which included a review of systems indicating that Plaintiff had no anxiety, no depression, and no sleep disturbances, Plaintiff testified that the record was not correct or accurate.  If asked, she would have told them she was having problems.  The same medical records saying she was not having muscle aches, localized joint pain, or numbness and tingling, also would not have been correct.  AR 58-59.

In response to questions from her attorney, Plaintiff testified that she has lost weight mostly from stress and trying to be able to exercise, walking with her rollator.  Prior to her rollator prescription in May 2018, she was prescribed a walker.  AR 62-63.

Plaintiff clarified that Dr. Kirby, her industrial injury doctor, gave her limitations.  He said that she could only use her hands and grasp and reach 12% of an eight-hour workday because of the carpal tunnel, numbness and pain from her epicondylitis, and swelling.  Since her husband died, she can use her mobile phone minimally.  She does not have a computer or a 10-key because she can longer use them.  AR 63.  Plaintiff further testified that she has problems reaching in front of her or reaching above her head.  She has pain in her right elbow, which limits how far she can push her elbow out.  If she puts her arms above her head, then they go numb.  She can reach out in front of her, but not for a third of the day.  AR 63-64.

Plaintiff testified that she sleeps during the daytime, and uses her CPAP machine.  She sometimes will lie down just to relieve her pain during the day.  She will switch positions from her recliner.  She will lie on the daybed in the living room and watch TV with her mom.  AR 64.

Plaintiff also testified that she drops things constantly.  She will drop her cup, her pill bottles, her utensils, and her toothbrush.  She drops things because her hands get weak.  Her neurologist said it was from the neuropathy.   AR 64-65.

With regard to her mental health, Plaintiff testified that she has been going to Fresno County Mental Health every four to six weeks since 2011.  She has panic or anxiety attacks a couple of times a week, which last fifteen minutes to half-an-hour.  When she has an attack, she gets dizzy, her heart starts racing, she gets sweaty and nauseous, and her whole body starts

1  trembling.  It takes her about an hour or two to recover after the attacks.  AR 65-66.

2       When asked about her depression, Plaintiff reported that she quite often gets so depressed

3  that she does not want to do anything or get out of bed.  It happens about once a week, up to three

4  days a week.  AR 66.  She does not hallucinate or have delusions.  AR 67.

5       When asked about her medications, Plaintiff testified that she has been taking opioids for

6  about nine years.  She has had changes in her personality and physical being because of the

7  narcotics.  She knows it has something to do with her IBS, constipation, and not being able to

8  lose weight.  The narcotics make her sleepy.  Plaintiff's mom also has noticed that she gets angry

9  easier.  AR 67.

10       **Medical Record**

11       The medical record was reviewed by the Court and will be referenced below as necessary

12  to this Court's decision.

13       **The ALJ's Decision**

14       On May 5, 2021, using the Social Security Administration's five-step sequential

15  evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security

16  Act.  AR 10-29.  Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful

17  activity since her alleged onset date.  AR 14.  The ALJ identified the following severe

18  impairments:  degenerative disc disease, obstructive sleep apnea, fibromyalgia, tennis elbow, and

19  obesity.  AR 14-16.  The ALJ determined that Plaintiff did not have an impairment or

20  combination of impairments that met or medically equaled any of the listed impairments.  AR 16-

21  18.

22       Based on a review the entire record, the ALJ found that Plaintiff retained the residual

23  functional capacity ("RFC") to perform light work, except that she could lift and carry 20 pounds

24  occasionally and 10 pounds frequently.  She could stand and walk six out of eight hours, and

25  could sit for six out of eight hours.  Her ability to push and pull was only limited by her ability to

26  lift and carry.  She could only occasionally use ramps and stairs.  She should never be required to

27  use ladders, ropes, or scaffolds.  She could occasionally balance, stoop, and kneel.  She should

28  never be required to crouch or crawl.  She was limited to no more than frequent handling

bilaterally.  She should never be required to walk on uneven terrain.  She was limited to no more than occasional exposure to workplace hazards such as dangerous machinery.  AR 18-26.  With this RFC, the ALJ determined that Plaintiff was unable to perform any past relevant work, but there were jobs in the national economy that she could perform, such as routing clerk, marker, and order caller.  AR 26-28.  The ALJ therefore concluded that Plaintiff had not been under a disability from January 1, 2009, through the date of the decision.  AR 28.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but

7

1  cannot, considering his or her age, education, and work experience, engage in any other kind of

2  substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882

3  F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v.*

4  *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

5  ### DISCUSSION[4]

6        Plaintiff contends that the ALJ erred in concluding that Plaintiff's mental impairments and

7  carpal tunnel syndrome were non-severe impairments.  Plaintiff also contends that the ALJ failed

8  to provide valid explanations supported by substantial evidence for discounting the opinion of Dr.

9  Michael Rabinoff, Plaintiff psychiatrist, and for discounting the upper extremity limitations

10  assessed by Dr. John Kirby.  Additionally, Plaintiff asserts that the ALJ failed to provide specific,

11  clear, and convincing reasons for discounting Plaintiff's testimony regarding her pain and

12  physical dysfunction.  (Doc. 15 at 12.)

13      **A.  Step Two Severity**

14        Plaintiff argues that the ALJ erred at step two by concluding that Plaintiff's mental

15  impairments and her carpal tunnel syndrome were non-severe.

16        An impairment, or combination of impairments, can be found non-severe if the evidence

17  establishes a slight abnormality that has no more than a minimal effect on an individual's ability

18  to work.  *See* SSR 85–28, 1985 WL 56856 (Jan. 1, 1985); *see also Yuckert v. Bowen*, 841 F.2d

19  303, 306 (9th Cir.1988) (adopting SSR 85–28).  "The mere existence of an impairment is

20  insufficient proof of a disability."  *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir.1993).  A

21  claimant bears the burden of proving that an impairment is disabling.  *Id.* (citation omitted).

22        "Step two is merely a threshold determination meant to screen out weak claims."  *Buck v.*

23  *Berryhill,* 869 F.3d 1040, 1048 (9th Cir. 2017), citing *Bowen v. Yuckert*, 482 U.S. 137, 146–47

24  (1987).  "It is not meant to identify the impairments that should be taken into account when

25  determining the RFC . . . .  The RFC . . . *should* be exactly the same regardless of whether certain

26  ----

27  [4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

28

1   impairments are considered 'severe' or not." *Id.* (emphasis in original).  Any error in failing to

2   include an impairment at step two is harmless if the ALJ considered any limitations imposed by

3   the impairment in subsequent steps of the sequential evaluation.  *Lewis v. Astrue*, 498 F.3d 909,

4   911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the

5   bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2

6   was harmless."); *Morrison v. O'Malley*, No. 1:22-CV-01559-SKO, 2024 WL 21558, at *6 (E.D.

7   Cal. Jan. 2, 2024) (explaining failure to include an impairment in the step two analysis is harmless

8   if the ALJ considers the functional limitations that flow from said impairment in subsequent steps

9   of sequential evaluation).

10          Mental Impairments

11          At step two of the five-step sequential evaluation, the ALJ determined that Plaintiff

12   suffered from the severe impairments of degenerative disc disease, obstructive sleep apnea,

13   fibromyalgia, tennis elbow, and obesity.  AR 14-16.  Plaintiff now contends that the ALJ erred by

14   failing to find her mental impairments severe.  (Doc. 15 at 13-16.)

15          According to the record, the ALJ considered Plaintiff's mental impairments, including

16   depression, anxiety, social anxiety, and bipolar disorder, at step two of the sequential evaluation.

17   AR 14.  In evaluating the severity those mental impairments, the ALJ assessed the degree of

18   limitation in the four broad paragraph B areas of mental functioning set out in the regulations for

19   evaluating mental disorders.  The ALJ found a mild limitation in understanding, remembering, or

20   applying information; a mild limitation in interacting with others; a mild limitation in

21   concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing

22   oneself.  AR 14-16.  The ALJ based these findings on (1) Plaintiff's multiple living arrangements

23   since her alleged onset date, including living with friends at one point; (2) her activities, which

24   included preparing meals, driving a car, going out in public, shopping in stores, paying bills,

25   counting change, and talking and texting with others; (3) her ability to perform basic, reading,

26   writing, and math; (4) detailed IQ and memory testing, which revealed that Plaintiff had a FSIQ

27   of 97, a processing speed score of 111, and memory scores of 100 or higher, with the memory

28   scores all noted in the average range; (5) the medical record, which showed that Plaintiff was

1    repeatedly found to be alert and oriented, well groomed, cooperative, with normal speech and

2    behavior, with linear, relevant and goal-directed thought processes, and with normal insight and

3    judgment; and (6) a consultative examiner's finding that Plaintiff's social skills and concentration

4    were adequate for work adjustment.  AR 14-15.

5         Because the ALJ found that Plaintiff's mental impairments caused no more than mild

6    limitation in any of the functional areas, the ALJ concluded that they were non-severe.  AR 16.

7    Even if the Court were to assume *arguendo* that the ALJ erred at step two by concluding that

8    Plaintiff's mental impairments were non-severe, any such error was harmless as the ALJ

9    considered Plaintiff's mental impairments at subsequent steps of the analysis.  *Monique A. v.*

10   *Colvin*, No. 23cv1981-LR, 2024 WL 5059153, at *10 (S.D. Cal. Dec. 10, 2024) ("If the ALJ errs

11   at step two, but considers the claimant's impairments at the subsequent steps of the analysis, the

12   error is harmless.").

13        In this case, the ALJ continued the sequential evaluation past step two and considered

14   Plaintiff's mental impairments in the RFC analysis.  Indeed, the ALJ confirmed that the RFC

15   assessment "reflects the degree of limitation . . . found in the 'paragraph B' mental function

16   analysis."  AR 16.  Further, when developing Plaintiff's RFC, the ALJ specifically considered the

17   medical record, which included not only Plaintiff's diagnosed depressive disorder, bipolar

18   disorder, anxiety disorder, and social anxiety disorder, but also her complaints of depressive

19   symptoms and anxiety, AR 18-21.  For instance, the ALJ first reviewed treatment records from

20   March 2019, which included complaints of depressive symptoms with anxiety and a diagnosis of

21   depression.  AR 18-19, 1003-1005.  The ALJ additionally considered medical records from

22   November 2018, which included findings of a depressed, irritable, and anxious mood, along with

23   a bipolar diagnosis.  AR 19, 1006-1008.

24        Similarly, the ALJ reviewed medical records from May 2019, which included a diagnosis

25   of depression and findings of a depressed and anxious mood (AR 1000-02); treatment notes from

26   August 2019, which included symptoms of depressive disorder, recurrent, with anxious distress

27   (AR 998-99); medical records from October 2019 reflecting symptoms and diagnoses of major

28   depressive disorder, recurrent, with anxious distress (AR 995-97); treatment records from

December 2019, identifying a depressed and anxious mood and a diagnosis of depression (AR 504-050; a psychiatric evaluation completed in March 2020 (AR 495-99); treatment records from May 2020, which noted a depressed and anxious mood and diagnoses of bipolar disorder and anxiety disorder (AR 500-01); treatment records from July and September 2020, identifying an anxious mood and a diagnosis of major depression recurrent with anxious distress (AR 857-61); and mental health treatment records from November 2020 (AR 1032-34).  AR 19-21.

Additionally, the ALJ considered the prior administrative medical findings of the state agency consultants, who found that Plaintiff had no severe mental impairments.  AR 24, 140-41, 158-60, 178-79, 199-200.  The ALJ found these opinions persuasive.  AR 24.  Plaintiff contends that these "opinions did not align with the medical evidence contained in the treatment notes, which documents Plaintiff's sleep disturbance, her impaired memory, negative thought content, her tearful affect, and her anxious, depressed, and/or irritable mood."  (Doc. 18 at 2-3, citing AR 498, 504, 857, 860, 995, 998, 1000, 1004, 1006-07, 1009-10, 1012, 1035, 1039.)  However, the record reflects that the state agency consultants considered similar medical evidence contained in the treatment notes of sleep disturbance, impaired memory, depressed mood, symptoms of "anxious distress," and irritability.  AR 138-40, 178-79.  Moreover, Plaintiff does not provide substantive argument challenging the ALJ's evaluation of the persuasiveness of the consultants' prior administrative medical findings.

The ALJ also took into account the opinion of the psychological consultative examiner, who found in October 2017 that verbally, cognitively, and socially Plaintiff was capable of job adjustment.  The examiner further found that Plaintiff's concentration and social skills were adequate for work adjustment, and any restrictions would primarily be medical-physical in nature. AR 24-25, 486-91.  The ALJ acknowledged that the examination was conducted about a year prior to Plaintiff's alleged onset date, but still found the opinion to be generally, but not completely persuasive.  AR 25.

Further, the ALJ considered the "checkbox form" opinion of Dr. Michael Rabinoff, Plaintiff's psychiatrist, who identified diagnoses of bipolar disorder, anxiety, social anxiety, and bereavement.  AR 26, 1050-51.  The ALJ found the opinion partly persuasive.  AR 25.  As

1    discussed below, the ALJ did not err in the evaluation of Dr. Rabinoff's opinion.

2            Given that the ALJ considered Plaintiff's mental impairments at subsequent steps of the

3    sequential evaluation, any error in finding them non-severe was harmless. *Monique A.*, 2024 WL

4    5059153, at *11 ("The Court finds that the ALJ erred at step two of his sequential evaluation

5    process by not considering Plaintiff's radiculopathy symptoms. Nevertheless, because the ALJ

6    considered Plaintiff's cervical radiculopathy symptoms in the RFC analysis, the error at step two

7    was harmless."); *Oudree E-S. v. O'Malley*, No. 23-cv-1655-W-KSC, 2024 WL 3458411, at *2

8    (S.D. Cal. July 18, 2024), report and recommendation adopted, No. 23-cv-1655 W (KSC), 2024

9    WL 3799441 (S.D. Cal. Aug. 12, 2024) (determining ALJ's conclusion that mental impairments

10   were non-severe at step two inconsequential to the outcome and, even if erroneous, not grounds

11   for reversal where ALJ fully considered mental impairments in the RFC analysis and step four).

12           <u>Carpal Tunnel Syndrome</u>

13           Plaintiff contends that the ALJ erred by finding her carpal tunnel syndrome non-severe.

14   (Doc. 15 at 19.)  As with her mental impairments, the Court finds that even if the ALJ erred in

15   concluding that her carpal tunnel syndrome was non-severe, any such error is harmless as the ALJ

16   considered the limiting of effects of her carpal tunnel syndrome at subsequent steps of the

17   sequential evaluation.  *Lewis*, 498 F.3d at 911; *Morrison*, 2024 WL 21558, at *6.  In particular,

18   the ALJ considered medical evidence regarding Plaintiff's carpal tunnel syndrome when

19   developing Plaintiff's RFC.  For instance, the ALJ noted that on June 19, 2019, Plaintiff was

20   diagnosed with carpal tunnel syndrome and advised to wear carpal tunnel splints.  AR 19, 531-34.

21   The ALJ further noted that on September 18, 2019, Plaintiff again was diagnosed with carpal

22   tunnel syndrome and was to continue with her bilateral carpal tunnel splints.  AR 19, 525-28.

23   Thereafter, on September 26, 2019, she received injections to treat her carpal tunnel symptoms.

24   AR 19, 524-25.  The ALJ also acknowledged that on December 5, 2019, Plaintiff complained of

25   carpal tunnel syndrome, and although surgery was suggested, Plaintiff desired to continue

26   conservative treatment.  She was advised to wear wrist splints at night.  AR 20, 521-23. The ALJ

27   observed that in January 2020, Plaintiff again was diagnosed with bilateral carpal tunnel

28   syndrome and her doctor recommended occupational therapy and wrist braces.  AR 20, 516.

In addition to the medical record, the ALJ also considered the prior administrative medical findings of the state agency medical consultants.  AR 24.  The state agency consultants reviewed evidence of Plaintiff's carpal tunnel syndrome and limited her to no more than frequent handling in both upper extremities to account for that diagnosis.  AR 24, 144-45, 162-63, 183-84, 204-05.  The ALJ found the prior administrative medical findings of the state agency consultants persuasive, adopted their opined manipulative limitations, and included no more than frequent handling bilaterally in Plaintiff's RFC.  AR 18, 24.

Given that the ALJ considered Plaintiff's carpal tunnel syndrome and any impact that impairment would have when determining an appropriate RFC, the Court concludes that any error in failing to identify Plaintiff's carpal tunnel syndrome as severe at step two is harmless. *See Kessler v. O'Malley*, No. 2:23-cv-01416 AC, 2024 WL 1908078, at *5 (E.D. Cal. May 1, 2024) (finding any error in failing to identify hip impairment as severe at step two to be harmless where ALJ considered the impact the impairment would have when determining an appropriate RFC and considered the recommendations by doctors, the testimony of plaintiff, and the medical records that pertained to the impairment and the impact it caused); *Teague v. Astrue*, No. CV 09-8848 JCG, 2010 WL 5094252, at *5 (C.D. Cal. Dec. 7, 2010) ("Second, even assuming the ALJ erred in overlooking to list prostatitis at step two, any error was harmless because the ALJ, in fact, considered Plaintiff's prostatitis while assessing his limitations," by noting "Plaintiff was 'treated for chronic prostatitis' and 'underwent a cystoscopy and bladder wash in September 2006[,]' ... [and by] further not[ing] that Plaintiff's 'symptoms included chronic pelvic discomfort, post void fullness and straining to urinate.'").

**B.  Physician Opinions**

Plaintiff argues that the ALJ failed to provide valid explanations supported by substantial evidence for discounting the medical source opinion of her treating psychiatrist, Dr. Michael Rabinoff, and for discounting the upper extremity limitations assessed by Dr. John Kirby.  (Doc. 15 at 16, 21.)

Because Plaintiff applied for benefits after March 27, 2017, her claims are governed by the agency's new regulations concerning how an ALJ must evaluate medical opinions.  20 C.F.R.

§§ 404.1520c, 416.920c.  Under these regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  As previously explained, the Commissioner evaluates the persuasiveness of the medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).  Supportability and consistency are the most important factors.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The Ninth Circuit has clarified that "under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."  *Woods*, 32 F.4th at 792  "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [it] considered the supportability and consistency factors' in reaching these findings."  *Id.* (internal citations omitted).

Dr. Rabinoff's Opinion

On March 17, 2021, Dr. Rabinoff completed a Mental Disorder Questionnaire for Evaluation of Ability to Work form.  AR 1050-51.  Dr. Rabinoff opined that Plaintiff's diagnoses of bipolar disorder, anxiety, social anxiety, bereavement, diabetes mellitus, and chronic pain would affect her ability to work, but determined that she had no abnormalities or significant impairment in orientation, memory, concentration, intelligence, or judgment.  AR 1050.  She also had no hallucinations, no delusional or paranoid thoughts, no confusion, no social isolation, no catatonic or disorganized behavior, no loosening of associations, and no other disorganization of thought.  AR 1050.  Dr. Rabinoff indicated that Plaintiff had mood swings that would impair her ability to perform full-time work, but she was currently stable, with a history of impairing mood episodes.  AR 1050.  Dr. Rabinoff additionally opined that Plaintiff's ability to perform activities of daily living had not become impaired to the point that she needed assistance from others.

1    However, her social function had become deficient to the point that it would impair her ability to

2    work with supervisors, co-workers, or the public.  Dr. Rabinoff explained that Plaintiff's anxiety

3    and social anxiety "may affect social interactions," but her "mood was stable now," with a history

4    of mood episodes.  AR 1051.  Dr. Rabinoff further opined that Plaintiff's mental illness impaired

5    her ability to adapt to stresses common to the normal work environment, noting that her anxiety

6    and social anxiety "may impair her ability to adapt to stresses."  AR 1051.

7            The ALJ considered Dr. Rabinoff's opinion, reasoning as follows:

8            On March 17, 2021, the doctor completed a checkbox form.  In the form, he
             indicated that the claimant [had] diagnoses of bipolar disorder, anxiety, social
9            anxiety, bereavement, diabetes mellitus, and chronic pain.  He indicated (by
             checking a box) that those impairments affected the claimant's ability to work.
10           However, he did not indicate how or to what extent they affected that ability.
             Therefore, that assertion is vague.  In addition, the doctor found that the claimant
11           had no abnormalities with her orientation, memory, concentration, intelligence or
             judgment that would affect her ability to work.  The doctor also indicated that the
12           claimant had no hallucinations, no delusional thoughts, no confusion, no social
             isolation, no disorganized behavior and no loosing of associations that would
13           impair her ability to work.  He did indicate that the claimant had mood swings in
             the past but noted that she was currently stable.  The doctor also found that the
14           claimant's mental impairments may impair her ability to handle stress and may
             affect her social interactions.  However, the doctor did not indicate that those
15           areas were actually affected and did not indicate the probability that they may be
             affected.  Therefore, those portions of the opinion are also vague.  The doctor's
16           conclusions are partly supported by his own findings and are somewhat consistent
             with the record as a whole.  Therefore, the undersigned finds this opinion to be
17           partly persuasive.

18   AR 26.

19           Plaintiff faults the ALJ for finding the doctor's opinion vague, arguing that "Dr.

20   Rabinoff's opinion was unequivocal in assessing that Plaintiff had mood swings that would

21   cause significant impairment in her ability to work (Tr. 1050), and that her impairments may

22   cause deficits in social functioning and her ability to adapt to stress (Tr. 1051)."  (Doc. 15 at 18.)

23   Contrary to Plaintiff's argument, Dr. Rubinoff's opinion was not "unequivocal."  Rather, Dr.

24   Rabinoff indicated only that Plaintiff's anxiety and social anxiety "*may* affect social interactions"

25   and "*may* impair her ability to adapt to stresses."  As the ALJ noted, Dr. Rabinoff failed to

26   indicate that those areas were actually affected, and he failed to indicate the probability that they

27   may be affected.  AR 26, 1051.  And, as the ALJ acknowledged, Dr. Rabinoff identified only

28   that Plaintiff had mood swings in the past, but she was currently stable.  AR 26, 1050.

Plaintiff further argues that "[t]o the extent the ALJ found that Dr. Rabinoff did not provide sufficient information regarding the frequency or extent of Plaintiff's mental limitations, the ALJ should have recontacted the doctor or otherwise developed the record by ordering a consultative psychological examination." (Doc. 15 at 18.) However, an ALJ's duty to develop the record further is triggered only where there is an inadequacy or ambiguity. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."). In this instance, there is no indication that the record was ambiguous or inadequate to allow for proper evaluation. The record included Plaintiff's testimony regarding her mental impairments, the prior administrative medical findings of the state agency consultants regarding Plaintiff's mental impairments, and the opinion of a consultative examiner, all of which were summarized by the ALJ. AR 22-23, 24. And, there was no indication by Plaintiff's counsel that the record failed to include Plaintiff's complete mental health treatment records. AR 40-41 (counsel confirmed no additional evidence other than testimonial statements from Plaintiff's mother and one of Plaintiff's good friends, which would be admitted once dated copies were received by the ALJ). Absent any inadequacy or ambiguity in the record, the ALJ had no duty to further develop the record. *See, e.g.*, *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (concluding the ALJ had no duty to recontact a medical source where the record was adequate to allow the ALJ to evaluate the evidence); *Gonzalez v. Kijakazi*, No. 1:21-cv-01676-SKO, 2023 WL 6164086, at *6 (E.D. Cal. Sept. 21, 2023) (finding ALJ had no duty to develop the record further where record contained what appeared to be plaintiff's complete treatment records and no gaps or inconsistencies were noted).

Dr. Kirby's Opinion

Plaintiff argues that the ALJ failed to provide specific or well-supported reasons for discounting Dr. Kirby's assessment of upper extremity limitations. (Doc. 15 at 21.)

Dr. Kirby completed a Physical RFC medical source opinion on March 24, 2021. AR 1052-55. Dr. Kirby diagnosed Plaintiff with bilateral epicondylitis, with symptoms of severe

1   bilateral elbow pain, and clinical findings of bilateral "marked tenderness of lateral epicondyles."

2   AR 1052.  Dr. Kirby opined that Plaintiff could rarely lift or carry less than five pounds.  AR

3   1052-53.  He further opined that Plaintiff could use her hands to grasp, turn and twist objects

4   12% of an 8-hour workday, could use her fingers for fine manipulations 12% of an 8-hour

5   workday, and could reach with her right arm 12% of an 8-hour workday.  AR 1054.

6       The ALJ considered Dr. Kirby's multiple form opinions, including those regarding the

7   opined upper extremity limitations.  The ALJ reasoned, in relevant part, as follows:

8           The undersigned has evaluated the multiple form opinion of John F. Kirby, M.D.
            (Exhibits C5F, C6F, C18F and C19F).  On June 18, 2020, the doctor indicated
9           that the claimant had an injury that occurred a decade prior and opined that the
            claimant was unable to do an illegible activity.  However, he indicated that her
10          ability to type was limited.  The doctor failed to check the boxes in the form
            indicating the claimant's work status.  In addition, other than indicating that her
11          ability to type was limited he offered no other restrictions.  Therefore, his opinion
            is vague.  The doctor filled out more similar forms on May 7, April 9, and January
12          30, 2020.  He also filled out more similar forms in 2018, 2019 and 2021.  In those
            forms, the doctor also failed to check any boxes regarding the claimant's work
13          status and offered no restrictions at all.  Therefore, those opinions are even more
            vague than the June 8, 2020 opinion.  As the doctor's opinions are vague and, in
14          part, illegible, the undersigned finds them not be persuasive.  In addition, the
            doctor completed another form on March 24, 2021 (Exhibit C18F).  He noted that
15          the claimant's only diagnosis was tennis elbow.  The doctor opined that the
            claimant could only lift and carry less than five pounds rarely.  This assertion is
16          not well supported by his own findings and is not consistent with the record as a
            whole.  Therefore, the undersigned finds that portion of the opinion not to be
17          persuasive. [  ] The doctor also opined that the claimant could only grasp, turn and
            twist objects and perform fine manipulation 12% of an eight-hour day.  He opined
18          that the claimant could only reach overhead with her right upper extremity 12% of
            the day.  These assertions are only partly supported by the doctor's own findings
19          and have only limited [consistency] with the record as a whole, which shows that
            the claimant is less limited than the doctor opined.  Therefore, the undersigned
20          finds this portion of the doctor's opinion not to be persuasive.

21  AR 25-26.

22      The Court finds that the ALJ appropriately evaluated the persuasiveness of Dr. Kirby's

23  March 2021 opinion considering the factors of supportability and consistency.  As to

24  supportability, the ALJ found the opinion that Plaintiff could only lift and carry less than five

25  pounds rarely was not supported by Dr. Kirby's own findings.  AR 25.  As pointed out by the

26  ALJ, Dr. Kirby diagnosed only tennis elbow.  AR 25, 1052.  However, Dr. Kirby included

27  limited clinical findings and objective signs to support the opinion, identifying only tenderness of

28  the lateral epicondyles, but no objective measures of strength, range of motion, or function.  The

form also did not explain how tenderness and elbow pain supported severe limitations in lifting and carrying.  Further, as the ALJ indicated, Dr. Kirby's prior opinions included no relevant lifting or carrying restrictions, only a limitation regarding Plaintiff's ability to type.  AR 25.

As to consistency, the ALJ found that Dr. Kirby's lifting and carrying restrictions were inconsistent with the record as a whole.  AR 25.  In summarizing the medical evidence, the ALJ observed that in September 2019, despite complaints of bilateral arm pain, Plaintiff was found to have 5/5 muscle strength in her upper extremities.  AR 19, 526-27.  Additionally, the ALJ acknowledged that while Plaintiff had been diagnosed with tennis elbow, x-rays of her left elbow conducted in October 2019 revealed no significant findings.  While she also had pain with range of motion in her left elbow, there was no indication of any reduction in her range of motion.  AR 19-20, 914 (left elbow "moderate pain w/motion;" left elbow x-ray "showed no significant finding").

Additionally, the ALJ evaluated the persuasiveness of Dr. Kirby's opinion that Plaintiff could only grasp, turn and twist objects and perform fine manipulation 12% of an eight-hour day and could only reach overhead with her right upper extremity 12% of the day. AR 25-26.  As to supportability, the ALJ found those limitations "only partly supported by the doctor's own findings."  AR 26.  As noted above, Dr. Kirby diagnosed only tennis elbow with objective findings of tenderness of the lateral epicondyles.  The completed form did not include any diagnoses related to Plaintiff's hands, wrists, or shoulders, and no clinical or objective findings related to grasping, turning, or twisting of objects, performing fine manipulations, or reaching.  Additionally, in prior opinions, Dr. Kirby identified only a typing restriction.

As to consistency, the ALJ found Dr. Kirby's opinion to have "only limited" consistency with the record as a whole, which "shows that the claimant is less limited than the doctor opined."  AR 26.  As indicated, the ALJ cited evidence of Plaintiff's normal upper extremity strength and lack of significant x-ray findings or limited range of motion related to the left elbow, which are not consistent with Dr. Kirby's reaching limitations.  Notwithstanding, the ALJ developed an RFC that included limitations in lifting, carrying, pushing, pulling, and not more than frequent handling bilaterally.  AR 18.

Plaintiff argues that "Dr. Kirby's assessment of upper extremity limitations was consistent with his own examination findings" that Plaintiff "had severe or marked tenderness in her elbows during examination." (Doc. 15 at 22.)  This argument is not persuasive for several reasons.  First, it appears to conflate the supportability of Dr. Kirby's opinion with consistency.  Second, in the form, Dr. Kirby supported his opinion solely with a diagnosis of bilateral lateral epicondylitis and clinical findings of tenderness of the lateral epicondyles.  AR 1052.  Dr. Kirby did not identify any objective or clinical findings of reduced range of motion or reduced strength.  Dr. Kirby also did not provide any objective findings (or even diagnoses) related to Plaintiff's shoulders, wrists, hands, or fingers.  AR 1052-55.  Likewise, Plaintiff does not identify treatment records from Dr. Kirby with examination findings beyond those related to her elbows.  Third, Plaintiff appears to seek a different interpretation of the medical evidence considered by the ALJ.  However, "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  *See Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2018).

Plaintiff also asserts that Dr. Kirby's opinion is consistent with other evidence of record showing that Plaintiff had severe dysfunction in her upper extremities.  To that end, Plaintiff cites to evidence of carpal tunnel syndrome, including an electrodiagnostic study showing bilateral carpal tunnel syndrome and examination findings showing decreased sensation in her upper extremities, positive Tinel sign, worsened pain with wrist extension, decreased finger flexion, positive Phalen's sign, and pain and tingling along the median nerve distribution (doc. 15 at 22, citing AR 515, 522, 531, 535.)  However, Plaintiff fails to demonstrate how these records are consistent with Dr. Kirby's extreme limitations, particularly with respect to lifting, carrying, or reaching.  Plaintiff also fails to demonstrate how those records are inconsistent with the ALJ's RFC for limited lifting, carrying, pushing, and pulling, and no more than frequent handling bilaterally.  AR 18.

Plaintiff additionally argues that the ALJ's broad finding that Dr. Kirby's opinion was not supported by his own findings and not consistent with the evidence as a whole does not provide the required specificity.  (Doc. 15 at 21-22.)  However, the ALJ's reasoning is readily apparent

and reasonably discernable.  As discussed, Dr. Kirby failed to identify objective or clinical findings supporting his opined physical limitations, and instead identified only a diagnosis of tennis elbow, findings of tenderness of the lateral epicondyles, and left elbow pain.  AR 1052. Dr. Kirby provided no objective or clinical findings related to Plaintiff's strength, range of motion, hands, wrists, or shoulders.  The ALJ also clearly identified objective findings in the record related to Plaintiff's upper extremities that were inconsistent with Dr. Kirby's severe limitations, including normal strength in her upper extremities and no reduction in range of motion in her elbows.  Even when an agency "explains its decision with 'less than ideal clarity,'" the Court must uphold it "if the agency's path may reasonably be discerned."  *See Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012)

**B. Subjective Complaints**

Plaintiff contends that the ALJ's reasons for discounting her symptom allegations were not clear and convincing.  (Doc. 15 at 24.)

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).  First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could cause some of the alleged symptoms, but discounted her statements concerning the intensity, persistence and limiting effects of those symptoms.  AR 22.  The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

The ALJ generally discounted Plaintiff's subjective complaints because they were not consistent with her daily activities.  AR 23.  Relevant here, the ALJ considered Plaintiff's assertion that her various alleged impairments affected her ability to lift, squat, bend, stand, reach,

walk, sit, kneel, talk, use her hands, and climb stairs.  AR 22.  The ALJ also considered Plaintiff's allegations that her impairments affected her memory, concentration, and understanding, as well as her ability to follow instructions, complete tasks, get along with others, and care for her personal needs.  AR 22-23.  However, the ALJ appropriately determined that Plaintiff's level of activity, which included living with others, preparing meals for herself, driving a car, going out in public three to four times a week, shopping in stores, going to the store one to three times week, shopping by phone, using electronic devices, and talking and texting others, was not congruent with her allegations regarding her physical and mental limitations, lessening the persuasiveness of her claims.  AR 14-15, 23 (referring to discussion at AR 14-15).  An ALJ can properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina*, 674 F.3d at 1112–1113; *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)  (concluding ALJ was permitted to consider daily living activities in analysis of claimant's allegations).  Even where a claimant's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Molina*, 674 F.3d at 1113.

The ALJ also considered that Plaintiff's allegations were inconsistent with the medical evidence.  AR 23.  While a lack of objective medical evidence cannot form the sole basis for discounting testimony, inconsistency with the medical evidence or medical opinions can be sufficient. *See Woods v. Comm'r of Soc. Sec.*, No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) (citing *Carmickle*, 533 F.3d at 1161); *see also Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."); *accord Dittmer v. Comm'r of Soc. Sec.*, No. 1:22-CV-01378-SAB, 2024 WL 967439, at *9 (E.D. Cal. Mar. 6, 2024) ("Ninth Circuit caselaw has distinguished testimony that is 'uncorroborated' by the medical evidence from testimony that is 'contradicted' by the medical records, deeming the latter sufficient on its own to meet the clear and convincing standard.").  For instance, the ALJ indicated that despite her impairments, Plaintiff was repeatedly

found to be in no acute distress or to be in no distress at all.  AR 23, *see also* AR 527, 533, 540, 928.  Further, the ALJ noted the inconsistency between Plaintiff's assertions that she uses a walker or cane at all times and the records indicating that she had a normal gait on multiple occasions, no assistive device use was noted in those exams, and she was negative for gait disturbance in multiple review of symptoms notations.  AR 19-22, 23, 511-12  (podiatric office visit, "ambulating in stiff soled shoes"), 512-13 (same), 517 (negative for gait problem), 532-33, 540 (normal gait), 878 (negative for gait disturbance), 884 (same), 890 (same), 928 (normal gait).  Further, the ALJ also found Plaintiff's allegations inconsistent with her doctor's August 2019 advice to engage in brisk walking for 30 minutes a day at least five days a week.  AR 19, 23, 929.  The ALJ also pointed out that while Plaintiff was prescribed a rolling walker, there were multiple treatment visits where no assistive device use was noted.  The ALJ further observed that as recently as March 24, 2021, Dr. Kirby indicated that Plaintiff did not need to use a cane, a walker, or any other assistive device.  AR 23, 1054.

The ALJ also acknowledged that while Plaintiff had been diagnosed with tennis elbow, x-rays of her left elbow conducted in October 2019 revealed no significant findings.  AR 19-20, 23, 914.  Also, on October 18, 2019, while Plaintiff was found to have some tenderness in her left elbow and it was noted that she had some pain with range of motion, there was no indication of any reduction in range of motion. AR 20, 23, 914.  Additionally, the ALJ indicated that Plaintiff was found to have 5/5 muscle strength in both her upper and lower extremities.  AR 19, 23, 527, 533, 541.  An ALJ may consider a lack of supporting medical evidence to discount subjective complaints provided it is not the only reason, as is the case here.  *Burch*, 400 F.3d at 681; *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).

 In addition, the ALJ considered that while Plaintiff had been diagnosed with obstructive sleep apnea, it was treated with a continuous positive airway pressure device.  AR 21, 23, 847.  The effectiveness of medication or treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability.").  Further, the ALJ considered that on repeated

1     respiratory exams, Plaintiff's lungs were noted to be clear to auscultation and her oxygen

2     saturation level was repeatedly found to be above 95%.  AR 19-20, 23, 458, 465, 914, 928, 943.

3         Based on the above, the Court finds that the ALJ provided specific, clear and convincing

4     reasons for discounting Plaintiff's subjective complaints.

5                      **CONCLUSION AND ORDER**

6         For the reasons stated, the Court finds that the ALJ's decision is supported by substantial

7     evidence in the record as a whole and is based on proper legal standards.  Accordingly, IT IS

8     HEREBY ORDERED as follows:

9         1.       Plaintiff's motion for summary judgment (Doc. 15) is denied.

10        2.       The Commissioner's request to affirm the agency's determination (Doc. 17) is

11     granted.

12        3.       The Clerk of this Court is directed to enter judgment in favor of Defendant

13     Carolyn Colvin, Acting Commissioner of Social Security, and against Plaintiff Christin Kay Baer,

14     and to close this case.

15

16     IT IS SO ORDERED.

17     Dated:    **January 10, 2025**         /s/ *Barbara A. McAuliffe*

18                                       UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28